UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY LOU VILLA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ALLSTATE INSURANCE COMPANY, a CORPORATION, and DOES 1 through 20, inclusive,<br><br>　　　　Defendants. | No. 2:13-cv-02476-MCE-EFB<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Mary Lou Villa ("Plaintiff") instituted the present lawsuit against Defendant Allstate Insurance Company ( "Defendant" or "Allstate") on grounds that Allstate has improperly withheld payments owed pursuant to a wrongful death judgment obtained against Allstate's insured, Janet Sartain, following a jury trial.  Plaintiff further asserts that Allstate wrongfully refused to settle Plaintiff's wrongful death claims within the policy limits available under the Allstate policy.  Allstate now moves to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6) on grounds that the Complaint fails to state a claim against Allstate on which relief can be granted.  Alternatively, Allstate seeks summary judgment under Rule 56.  For the reasons set forth below, Allstate's Motion will be denied.

///

## BACKGROUND

This case arises from a wrongful death lawsuit filed by Plaintiff following the April 4, 2009, murder of her son, Alexander Villa, by Alexander's father, Gerardo Villa. In addition to suing Gerardo Villa, Plaintiff's lawsuit also named Janet Sartain as a defendant on grounds that Ms. Sartain failed to warn Alexander of his father's alleged violent propensities. At the time of Alexander's death, Janet Sartain was an insured person under a policy of homeowners insurance by Allstate that included liability coverage of $100,000 per occurrence. Pursuant to that policy, Allstate undertook the defense of Ms. Sartain in Plaintiff's wrongful death action.

According to the present Complaint, Plaintiff made two separate offers to settle her claims against Janet Sartain within the applicable $100,000 policy limit in 2012 and 2013, respectively. Pl.'s Compl., ¶¶ 6-7. After Allstate declined those demands, Plaintiff went to trial and, on March 28, 2013, obtained a judgment against Ms. Sartain for $408,304, plus costs and interest. Id. at ¶ 8.

Ms. Sartain subsequently filed a request for new trial on April 24, 2013, and after that request was denied, she filed a notice of appeal on or about July 8, 2013. Id. at 9-10, 12-13. Ms. Sartain's appeal was dismissed on August 22, 2013, and the underlying verdict against Ms. Sartain became final on August 30, 2013. Thereafter, on September 13, 2013, Allstate issued a check to Plaintiff and to her attorney for $100,000, but did not remit payment for the remainder of the $408,304 judgment levied against Ms. Sartain. Moreover, Allstate tendered no payment for the $118,290.73 awarded to Plaintiff or for interest, which Plaintiff claims is payable on the entire judgment amount at the rate of ten percent from February 12, 2012, when Plaintiff made a statutory demands to settle within Allstate's policy limits in accordance with California Code of Civil Procedure section 998.

Plaintiff filed the present complaint in state court on September 18, 2013, alleging causes of action against Allstate for violations of California Insurance Code section

11580 and for breach of the implied covenant of good faith and fair dealing. Allstate removed the complaint from the Sacramento County Superior Court to this Court on November 27, 2013, citing diversity of citizenship under 28 U.S.C. § 1441(a) as the basis for federal jurisdiction. The instant motion follows.

## STANDARD

Federal Rule of Civil Procedure 12(b)(6)[1], as indicated above, authorizes the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." In ruling on a motion to dismiss brought under Rule 12(b)(6), however, all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Dismissal under Rule 12(b)(6) may nonetheless be indicated where a complaint lacks any "cognizable legal theory" or where there is an "absence of sufficient facts alleged to support a cognizable legal theory." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). While detailed factual allegations are not necessary to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Generally, a court cannot consider material outside the complaint (like facts presented in briefs, declarations and discovery materials) in ruling on a motion to dismiss brought under Rule 12(b)(6). Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001). A court can, however, augment the facts and inferences from the body of the complaint with "data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011); Coto Settlement v.

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise indicated.

3

1  Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010).  Otherwise, as Rule 12(d) provides, if

2  "matters outside the pleadings are presented to and not excluded by the court, [a

3  12(b)(6) motion] must be treated as one for summary judgment under Rule 56."

4        As indicated above, while Allstate's motion here is ostensibly brought as a motion

5  to dismiss under Rule 12(b)(6), it is alternatively made by way of summary judgment

6  under Rule 56.  In addition to the allegations set forth in the Complaint itself, both sides

7  ask the Court to judicially notice, pursuant to Federal Rule of Evidence 201, certain court

8  records generated in the underlying wrongful death lawsuit.  Those requests are

9  unopposed and are granted.  As matters properly subject to judicial notice, they do not

10 require that this motion be converted from a motion to dismiss to a motion for summary

11 judgment.  In addition to requesting judicial notice, however, both sides have also

12 submitted declarations with attached exhibits.  While the declaration submitted by

13 Allstate seeks simply to authenticate the $100,000 check issued to Plaintiff on

14 September 9, 2013, in partial satisfaction of the judgment rendered against Ms. Sartain

15 in the underlying action, and to establish that the check was endorsed and cashed

16 shortly thereafter (a matter about which there appears to be no dispute), the declaration

17 submitted by Plaintiff's counsel, Robert Merritt, is far more extensive and includes

18 detailed allegations with respect to Allstate's failure to pay costs, as well as its alleged

19 obligation to pay interest at the rate of ten percent by giving Allstate's failure to accept a

20 California Code of Civil Procedure section 998 Offer to Compromise in 2012.

21 Mr. Merritt's declaration also attaches correspondence between him and Ms. Sartain's

22 assigned defense counsel, Bradley Thomas.  All these matters go well beyond the scope

23 of a Rule 12(b)(6) motion to dismiss and because they figure in the Court's analysis as

24 set forth below, this matter is properly viewed as a motion for summary judgment

25 pursuant to Rule 56.

26       The Federal Rules of Civil Procedure provide for summary judgment when "the

27 movant shows that there is no genuine dispute as to any material fact and the movant is

28 entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v.

Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under

Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. 87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

**A.  California Insurance Code § 11580**

California Insurance Code § 11580 permits a party who has obtained a judgment against an insured tortfeasor to maintain a direct action against the insurer providing liability insurance "on the policy and subject to its terms and conditions." Cal. Ins. Code § 11580(b)(2). This makes the judgment creditor "a third party beneficiary of the insurance contract between the insurer and insured." Murphy v. Allstate Ins. Co., 17 Cal. 3d 937, 943 (1976).

According to Defendant, because Plaintiff "has already received the policy limits of $100,000 from Allstate," no claim under § 11580 can be maintained. Defs.' Mot., 4:20. In opposition, however, Plaintiff argues that in addition to payment of the policy limit itself, Ms. Sartain is also "liable for interest at the rate of ten percent from February 2012 due to the fact that she and Allstate did not accept the statutory California

///

///

Code of Civil Procedure section 998 Offer to Compromise." Pl.'s Opp'n, 5:9-11.[2] Allstate tries to discredit that claim by alleging that Plaintiff's own complaint states no more than that Alllstate refused to pay the $100,000 policy limit, explaining that "Plaintiff cannot accuse Allstate of not paying the 'policy limit' when her complaint alleges the policy limit was $100,000," and that sum was paid. Def's Reply, 2:20-22. That characterization is, however, inaccurate. The prayer to Plaintiff's First Cause of Action, for breach of section 11580, seeks not only damages in the amount of $100,000,[3] but also costs totaling $118,290.73, plus interest. Pl.'s Compl., 5:3-4. Consequently, Allstate's claim that Plaintiff seeks nothing more than the applicable $100,000 liability policy limit cannot be sustained.

Significantly, Allstate does not dispute (or even address in any way) Plaintiff's claim that it owes interest pursuant to California Code of Civil Procedure section 998 given its failure to accept Plaintiff's statutory Offer to Compromise. Moreover, with respect to Plaintiff's additional claim that costs and interest are "usually governed by a supplementary payment provision" contained within liability policies, Pl.'s Opp'n, 8:21-22, Allstate does no more than assert that Plaintiff's claim in that regard amounts to mere speculation. The case Allstate cites to support its position that no such costs are payable, however, Hughes v. Mid-Century Ins. Co., 38 Cal. App. 4th 1176 (1995), is inapposite because Hughes involved an actual examination of the policy, and a finding that no such provision was present. Id. at 1182-83. Here, no such examination of the policy has occurred. Additionally, Allstate's apparent claim that Plaintiff should have alleged in her complaint that the policy contained some such provision is unavailing. First, as already indicated, Plaintiff's prayer requests not only the liability policy limit, but

---

[2] While Plaintiff's Complaint refers to two offers to settle within the applicable policy limits In February 2012 and February 2013, respectively, the briefing submitted in connection with this motion makes it clear only that the February 2012 offer was made in accordance with section 998.

[3] Plaintiff's Complaint, dated September 13, 2013, was prepared before Allstate paid its $100,000 liability policy limit. Allstate's draft for that amount was issued that same day (see Decl. of Pete Bamford, Ex. A) and it was not received until after Plaintiff's counsel, Robert Merritt, had submitted Plaintiff's Complaint for filing. Decl. of Robert M. Merritt, ¶ 23.

1 also costs and interest.  Second, Allstate does not explain how Plaintiff could have
2 obtained a copy of Ms. Sartain's entire insurance policy (aside from discovering the
3 applicable policy limits) prior to filing the present lawsuit.  Moreover, since the instant
4 Motion to Dismiss was filed on December 5, 2013, approximately one week after the
5 matter was removed to this Court on November 27, 2013 and just over a month after
6 Allstate was initially served, Plaintiff clearly had no time to conduct the discovery
7 necessary to obtain the policy prior to opposing the subject motion.

8       In sum, based on the record before it at the present time, this Court cannot rule
9 out Plaintiff's entitlement, as a judgment creditor of Allstate's insured, to additional
10 benefits under the Allstate policy beyond the $100,000 that Allstate has already paid on
11 Ms. Sartain's behalf.  The Court therefore cannot find as a matter of law that Plaintiff is
12 precluded from maintaining a cause of action for violation of California Insurance Code
13 section 11580 with respect to benefits that are owing but unpaid under the policy.

14       **B.  Breach of the Implied Covenant of Good Faith and Fair Dealing**

15       In the context of the contractual relationship between the liability insurer and its
16 insured, an implied covenant has been recognized under California law that requires the
17 insurer to accept a reasonable settlement offer when it is likely that the judgment will
18 exceed the available policy limit.  Hand v. Farmer's Ins. Exch., 23 Cal. App. 4th 1847,
19 1854 (1994) (citing Johansen v. Cal. State Auto. Assn. Inter-Ins. Bureau, 15 Cal.3d 9, 16
20 (1975)).  A similar implied covenant has also been recognized that requires an insurer to
21 refrain from unreasonably, or in bad faith, withholding payments of benefits due under
22 the policy.  Id. (citing Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566, 573-75 (1973)).

23       Although generally these implied duties run in favor of the insured as the
24 contracting party, certain exceptions have been recognized, particularly with regard to
25 third party beneficiaries of insurance contracts.  A judgment creditor is recognized as
26 such a beneficiary of the insurance contract between the insurer and its insured.  Murphy
27 v. Allstate Ins. Co., 17 Cal.3d at 943.  As the court in Hand recognized, "the duty not to
28 withhold in bad faith payment of adjudicated claims runs not only in favor of the insured

but also in favor of a judgment creditor" who has obtained a judgment against the insured. Hand , 23 Cal. App. 4th at 1858.  Consequently, a bad faith refusal to pay a judgment creditor the entire amount of a judgment, once it becomes final, "implicates some recognizable duty of good faith by the insurer under its policy . . . intended to benefit such a third party beneficiary." Id. at 1857.

In the present matter, to the extent that Plaintiff may have a section 11580 claim for failure to pay benefits due under the policy, a potential claim this Court has already recognized as set forth above, the duty not to withhold benefits payable under the policy also triggers an implied covenant of good faith and fair dealing. Id. at 1856.  This implied covenant not to unreasonably withhold adjudicated damages payable under the policy is owed contractually to both the insured and to the judgment creditor. Id. at 1858.

It follows that Plaintiff, as the judgment creditor of Allstate's insured, Ms. Sartain, may have a viable claim for breach of the implied covenant against Allstate if Allstate indeed withheld benefits due under the policy like costs and interest.[4]  This is enough, standing alone, to survive Allstate's attack on Plaintiff's Second Cause of Action, which alleges breach of the implied covenant.  The Court does note, however, that Plaintiff cannot maintain an implied covenant claim on the second recognized basis for that claim, an unreasonable failure to settle within the policy limits.  As the Murphy court

---

[4] While Plaintiff also alleges that Allstate's delay in paying the $100,000 liability policy limit itself was also unreasonable, any delay in that regard hinges on the merit of Plaintiff's claim that Allstate's appeal on behalf of Ms. Sartain was unjustified and frivolous.  Specifically, Plaintiff claims that Allstate's resort to an untimely motion for new trial and subsequent appeal resulted in a delay in paying the $100,000 from March 28, 2013, when judgment was initially entered, until September 13, 2013, when Allstate's draft was ultimately issued.  This motion required the Court to determine the merit of Allstate's appeal.  While the Ninth Circuit did apparently dismiss Plaintiff's appeal as untimely pursuant to Plaintiff's Motion to Dismiss to that effect (see Decl. of Robert Merritt, ¶ 15, 19), the Ninth Circuit also rejected Plaintiff's request for sanctions, which was made on grounds that the appeal was improper.  (See Allstate's Request for Judicial Notice, Ex. B).  In Coleman v. Gulf Ins. Group, 41 Cal.3d 782 (1986), the California Supreme Court found that whether or not an appeal is meritless should be determined by the appellate court by way of California Code of Civil Procedure section 907, which authorizes costs on appeal if the appeal was frivolous or taken solely for delay, rather than in a separate civil action like this one.  Id. at 791, 797.  Consequently, the issue of delay associated with Allstate's appeal does not appear to be properly before this Court in the context of Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.  Instead, the issue of the frivolousness of Allstate's appeal seems to have already been decided by the appellate court which heard the appeal, the venue where it should have been adjudicated pursuant to Coleman.

recognized, because "the duty to settle is intended to benefit the insured and not the injured claimant, third party beneficiary doctrine does not furnish a basis for the latter to recover." Murphy, 353 F.3d at 944.  Murphy went on to explain that "a third party should not be permitted to enforce covenants made not for his benefit, but rather for others." Id.  Although an insured may assign his cause of action for breach of the duty to settle to a judgment creditor like Plaintiff, id. at 942, no such assignment occurred here. Consequently, Plaintiff cannot maintain a claim for breach of the implied covenant to the extent that claim is premised on a failure to settle within available policy limits on Ms. Sartain's behalf.

## CONCLUSION

For all the foregoing reasons, Defendant Allstate's Motion to Dismiss Plaintiff's Complaint (ECF No. 7), which is alternatively brought as a request for summary judgment and which the Court construes as such given the inclusion of evidence and argument going beyond the scope of the pleadings, is hereby DENIED.[5]

IT IS SO ORDERED.

Dated:  May 22, 2014

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[5] Having determined that this oral argument was not of material assistance, the Court ordered this matter submitted on the briefs in accordance with Local Rule 230(g).